UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE DAILY BEAST COMPANY LLC,<br><br>        Plaintiff,<br><br>        -against-<br><br>ENDGAME360, INC.; DAMIEN HOFFMAN; and DEREK HOFFMAN,<br><br>        Defendants. | CIVIL ACTION NO.<br><br>19 CV _____ |

## COMPLAINT

Plaintiff The Daily Beast Company LLC ("TDB" or "Plaintiff") by and through its undersigned counsel, for its Complaint against Endgame360, Inc. ("Endgame"), Damien Hoffman, and Derek Hoffman (Damien and Derek Hoffman, collectively, the "Hoffman Defendants" and together with Endgame, "Defendants") alleges as follows:

## STATEMENT OF THE CASE

1. Plaintiff seeks monetary and injunctive relief against Defendants for numerous causes of action, *inter alia*, (i) trademark counterfeiting in violation of 15 U.S.C. § 1114; (ii) trademark infringement, in violation of 15 U.S.C. § 1114; (iii) trademark dilution in violation of 15 U.S.C. § 1125; and (iv) false descriptions/false designations of origin, in violation of 15 U.S.C. § 1125.

2. Defendants are counterfeiting and infringing on TDB's CHEAT SHEET trademark by offering identical current events news services under the identical CHEAT SHEET trademark.

3. For years, TDB has used its CHEAT SHEET trademark in connection with its news and information services that help keep consumers up to speed with the fast-paced news cycle. These services provide consumers with a constantly-updating list of top 10 news stories. Each

story is then summarized for consumers and links to original TDB content and third-party content featuring even more news and information about the story.  TDB has offered these services under the CHEAT SHEET mark through its website, TheDailyBeast.com, since 2008 and through it's THE DAILY BEAST mobile app since 2016.

4. After TDB began offering its services under the CHEAT SHEET mark, Defendants began printing a newsletter featuring investment advice for consumers under the name "Wall St. Cheat Sheet."  Defendants later began offering investment and financial services through a website, WallStCheatSheet.com, and eventually purchased CheatSheet.com where they continued to offered their investment and financial services under the name "Wall St. Cheat Sheet."

5. But then, in or about October 2014, Defendants stopped providing investment and financial services and began providing entertainment-oriented trivia lists on their website.  As part of this shift they started using the name "Cheat Sheet" (without "Wall St.").

6. Recently, Defendants again changed their business, this time shifting from an entertainment website filled with trivia lists to a news and information service, just like the services TDB offers under its CHEAT SHEET trademark.

7. Defendants' final change in business counterfeits and infringes TDB's CHEAT SHEET trademark by using the identical mark for identical services.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the subject matter of this civil action pursuant to 15 U.S.C. § 1051, *et seq*., § 1114(1), § 1121 and 28 U.S.C. §§ 1331 and 1338.

9. This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law

claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10. This Court may exercise personal jurisdiction over Defendants pursuant to CPLR § 302(a)(1) and (2), because the acts about which Plaintiff complains arise from Defendants' transaction of business within New York State and/or agreement to supply services in New York State and/or Defendants' commission of a tortious act within New York State.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged by Plaintiff occurred within the City, State and County of New York.

## **THE PARTIES**

12. Plaintiff The Daily Beast Company LLC is a Delaware Limited Liability Company with its principal place of business located at 555 West 18th Street, New York, New York 10011.

13. Defendant Endgame360, Inc. is a North Carolina corporation with its principal place of business located at 169 Skyview Circle, Asheville, NC 28804.

14. Defendant Damien Hoffman is Chief Executive Officer of Defendant Endgame360, Inc. According to the North Carolina Secretary of State's records, he resides 169 Skyview Circle, Asheville, NC 28804.

15. Defendant Derek Hoffman is President of Defendant Endgame360, Inc. According to the North Carolina Secretary of State's records, he resides 4 Chimney Crest Drive, Asheville, NC 28806.

**STATEMENT OF FACTS**

**I.     PLAINTIFF AND ITS BUSINESS**

16.     TDB is a well-known news and information provider, delivering award-winning original reporting and sharp opinion in the arena of politics, pop-culture, and current events. TDB provides its services through its website, TheDailyBeast.com, and under the registered trademark THE DAILY BEAST. TDB offers additional news and information services under other registered trademarks, including CHEAT SHEET. TDB's CHEAT SHEET service provides consumers with a constantly-updating list of the top ten current news stories along with summaries of these stories and links to TDB's own original news content or that of third-parties where consumers can find additional information.

17.     TDB is the owner of the entire right, title, interest in and to, *inter alia*, the valid, subsisting trademarks and uncanceled trademark registrations, and all the goodwill associated therewith, on the Principal Register of the United States Patent and Trademark Office which include, but are not limited to, the following:

| **Trademark** | **Reg. No.** | **Goods or Services** | **Registration Date** |
|---|---|---|---|
| CHEAT SHEET | 3960598 | Class 41: Providing an online website featuring summaries of current events news articles, and links to the current events news websites of others | May 17, 2011 |
| CHEAT SHEET | 5514041 | Class 9: Downloadable mobile applications for reporting information, namely, current events news articles, and links to the current events news websites of others; downloadable software in the nature of a mobile application for reporting information, namely, current events news articles, and providing links to the current events news | July 10, 2018 |

|  |  | websites of others; mobile applications for reporting information, namely, current events news articles, and providing links to the current events news websites of others on cell phones, tablets and other handheld devices |  |
|---|---|---|---|

(collectively referred to as "Plaintiff's Federally Registered Trademarks"). Copies of the registrations for Plaintiff's Federally Registered Trademarks, as listed on the U.S. Patent and Trademark Office website, are attached as Exhibit A.

18. TDB is also the owner of all common law rights associated with its trademarks in connection with its services.

19. Plaintiff's Federally Registered Trademarks are in full force and effect.

20. Plaintiff's Federally Registered Trademark, No. 3960598, has become incontestable under the Lanham Act and has been used since at least October 2008 in connection with TDB's services.

21. Plaintiff's Federally Registered Trademarks and the goodwill of TDB's business in connection with which the trademarks are used have never been abandoned and are in full force and effect. TDB intends to preserve and maintain its rights with respect to Plaintiff's Federally Registered Trademarks.

22. Since at least as early as October 2008, TDB and its predecessors-in-interest have advertised, promoted, and offered their news and information services under Plaintiff's Federally Registered Trademarks. Accordingly, Plaintiff's Federally Registered Trademarks have become well-known and well-established in connection with TDB's business and the news and information services offered thereunder.

23.     Consumers and the general public have come to rely upon and recognize Plaintiff's Federally Registered Trademarks as exclusive marks of TDB. Plaintiff's Federally Registered Trademarks are inherently distinctive and have come to represent and symbolize the valuable goodwill of TDB.

## II.    DEFENDANTS AND THEIR BUSINESSES

24.     In or about November 2008, the Hoffman Defendants began offering printed, financial newsletters under the name Wall St. Cheat Sheet. These monthly financial newsletters targeted mainstream, retail investors.

25.     In or about 2009, the Hoffman Defendants and/or Defendant Endgame created a consumer-oriented finance website called "Wall St. Cheat Sheet" which was available online at WallStCheatSheet.com.

26.     Upon information and belief, the purpose of Defendants' goods and services was to provide financial news and information to help its readers make informed investment decisions.

27.     On March 24, 2010, the Hoffman Defendants applied for the trademark CHEAT SHEET in connection with "[e]ducational and learning publications, namely, newsletters and non-fiction books about business, politics, sports, entertainment, and lifestyle" in class 16 for printed matter. The Hoffman Defendants alleged first use in commerce on November 15, 2008. This application registered on October 26, 2010 (Reg. No. 3867463).

28.     As of mid-2014, the Defendants' service was still branded "Wall St. Cheat Sheet" and remained focused on providing financial information to assist consumers with investment decisions. The website included sections titled "Stock News," "Investing Ideas," "Econ & Policy," "Personal Finance," and "Tools for Investors."

29. Upon information and belief, in or about October 2014, the Hoffman Defendants and/or Defendant Endgame acquired the domain CheatSheet.com. That same month they began hosting all of their Wall St. Cheat Sheet content on the new CheatSheet.com website and redirected traffic from their original domain, WallStCheatSheet.com, to the new domain.

30. Upon information and belief, in or about October 2014, Defendants retitled their website "Cheat Sheet" and stopped using "Wall St. Cheat Sheet" as the name of their website.

31. Upon information and belief, in or about October 2014, in conjunction with Defendant's change to using the domain, CheatSheet.com, Defendants changed the nature of their services from financial-oriented news and investment advice for investors to one focused on entertainment services by providing trivia lists. For example, in or about October 2014, the website featured articles titled, "10 of the Worst Cars of the 2000s," "6 Unwritten Rules of the NFL," and "5 Biggest Comebacks in NFL History." However, at this time, the website was not a general news and information service.

32. On November 28, 2016, the Hoffman Defendants applied for the trademark CHEAT SHEET in connection with "[p]roviding an online website featuring information relating to educational and learning publications, namely, newsletters and non-fiction books about business, politics, sports, entertainment, lifestyle, computer entertainment and gaming" in class 41 (App. No. 87249746). The Hoffman Defendants later amended the description of services to: "Providing an online website featuring information and reviews in the field of publishing of non-fiction books and newsletters about business, sports, entertainment, lifestyle, computer entertainment and gaming" in class 41.

33. As of November 29, 2016, Defendants' website still focused on trivia lists, featuring articles titled, "7 Gifts That Beyoncé Fans Will Love for Under $30," "Dinner Made

7

Easy: A Blue Apron Meal Delivery Review," and "9 Things You Should Never Wear to a Wedding."

34. Defendants' website continued to focus on trivia lists through at least November 23, 2017, featuring articles titled, "The Most Hated People You'll See in Airport Security Lines," "6 Eyeliner Designs Every Woman Should Try," and "5 Kitchen Hacks to Cut Thanksgiving Stress."

35. During 2018, Defendants again shifted the focus of their website, this time away from trivia lists, and began publishing articles on recent news and current events. On November 20, 2018, Defendants published an article titled, "Is Ivanka Trump Under Investigation?" discussing the Washington Post's report on Ms. Trump's use of personal email. On that same day, TDB included an article discussing the same Washington Post report on its CHEAT SHEET service.

36. On November 26, 2018, Defendants published an article discussing the migrant caravan and border security but the article was titled, "Why Are Melania Trump's Christmas Decorations Getting So Much Hate?" On that same day, TDB also included a report in its CHEAT SHEET service discussing the reopening of the border after protests involving the migrant caravan.

37. Defendants published similar stories reporting on current event news during 2018, including, "How Republicans Could End Up in a Nightmare Scenario in 2018," "How Flynn Could Actually Take Down the Trump Administration," "Here's Why These Workers Who Supported Trump Are Turning on Him," "This 1 Thing From Melania Trump's Past Is Now Haunting Her as First Lady," and "These American Presidents Were Just as Controversial as Donald Trump."

38. On November 26, 2018, Plaintiff instituted a proceeding before the Trademark Trial and Appeal Board (Opp. No. 91244963) opposing Defendant's trademark application for CHEAT SHEET (App. No. 87249746). This application is still pending.

39. After filing this opposition proceeding, on December 3, 2018, Defendants published an article on the recent death of former President George H.W. Bush titled, "George H.W. Bush: What Caused His Death, and What Was His Net Worth at the Time?" On that same day, TDB also reported on the former President's death and where he would be buried.

40. Defendants reporting on current event news has continued into 2019.

41. On January 3, 2019, Defendants published an article reporting on the government shutdown and the border wall, but titled the article, "Did Artie Lange Give Donald Trump the Idea to Build a Border Wall?" On that same day, TDB included an article on the government shutdown in its CHEATSHEET news service.

42. On February 17, 2019, TDB reported that Jussie Smollett staged his own assault. The very next day, Defendants published an article on the same topic titled, "Stars React Amidst Reports That Jussie Smollet Attack Might Have Been Staged."

43. Despite describing themselves as "as a lifestyle site" featuring articles on "a wide-range of subjects," Defendants actually operate a current events news service identical to TDB's CHEAT SHEET service under the identical name. As outlined above, Defendants publish articles reporting on the same topics on nearly the same days as TDB's reporting.

44. Defendants' website therefore now uses a CHEAT SHEET trademark identical to Plaintiff's Federally Registered Trademarks in connection with identical news and information services.

## FIRST CAUSE OF ACTION

### TRADEMARK COUNTERFEITING
### 15 U.S.C. § 1114

45. Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

46. Defendants, through their website, knowingly advertised, promoted, and offered its goods under counterfeits of Plaintiff's Federally Registered Trademarks.

47. Defendants' use of counterfeits of Plaintiff's Federally Registered Trademarks in connection with the advertisement, promotion, and offer of services that do not originate from Plaintiff is likely to cause confusion, mistake and deception among consumers that the counterfeit services originate from, are sponsored by, or associated with, Plaintiff.

48. Defendants' misconduct constitutes the intentional and willful use of counterfeits of Plaintiff's Federally Registered Trademarks in connection with the offering or distribution of services, in violation of 15 U.S.C. § 1114(1).

49. Defendants' acts therefore constitute trademark counterfeiting in violation of 15 U.S.C. § 1114.

50. Upon information and belief, in committing these wrongs, Defendants intentionally and willfully intended to trade on the goodwill associated with Plaintiff's Federally Registered Trademarks.

51. Upon information and belief, in committing these wrongs, Defendants acted willfully within the meaning of 15 U.S.C. § 1117(c)(2).

52. Upon information and belief, Defendants have made and will continue to make substantial profits to which they are not entitled in law or equity.

53. Upon information and belief, Defendants intend to continue their infringing acts unless restrained by this Court.

54. Defendants' acts damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

55. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using Plaintiff's Federally Registered Trademarks or any marks identical to, substantially undistinguishable from, and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## SECOND CAUSE OF ACTION

### TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114

56. Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

57. Plaintiff's Federally Registered Trademarks are nationally recognized, including within the Southern District of New York, as being used in connection with Plaintiff's services.

58. The registrations embodying Plaintiff's Federally Registered Trademarks are in full force and effect and Reg. No. 3960598 has become incontestable under the Lanham Act.

59. Defendants' unauthorized use of Plaintiff's Federally Registered Trademarks in commerce and advertising constitutes false designation of origin and a false representation that the services are offered, sponsored, authorized, licensed by, or otherwise connected with Plaintiff, or

come from the same source as Plaintiff's services and are of the same quality as that assured by Plaintiff's Federally Registered Trademarks.

60. Defendants' infringing use of Plaintiff's Federally Registered Trademarks is without Plaintiff's permission or authority and is in total disregard of Plaintiff's rights to control its trademarks.

61. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has sponsored, authorized, licensed or is otherwise connected to or affiliated with Defendants.

62. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill.

63. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless Defendants are restrained by this Court from infringing Plaintiff's Federally Registered Trademarks.

64. Plaintiff has no adequate remedy at law.

65. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using Plaintiff's Federally Registered Trademarks or any marks identical to, substantially indistinguishable from, and/or confusingly similar thereto, for any purpose, and to recover from Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action

pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## THIRD CAUSE OF ACTION

### FEDERAL TRADEMARK DILUTION
### 15 U.S.C. § 1125(c)

66. Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

67. Plaintiff is the exclusive owner of Plaintiff's Federally Registered Trademarks as set forth above.

68. Defendants' use of Plaintiff's Federally Registered Trademarks in connection with the counterfeit services they offer constitutes Defendants' use in commerce of Plaintiff's Federally Registered Trademarks.

69. Plaintiff's Federally Registered Trademarks have been used for years and are so globally recognized and associated with Plaintiff that they are entitled to be recognized as famous and distinctive under 15 U.S.C. § 1125(c).

70. Plaintiff's Federally Registered Trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with Plaintiff and its distinctive reputation for high quality services. The public is likely to understand that Plaintiff authorized, sponsored, or is affiliated or associated with the services Defendants offer under Plaintiff's Federally Registered Trademarks and further consume the services in the erroneous belief that Defendants are associated with, sponsored by or affiliated with Plaintiff, when they are not.

71. Plaintiff has not authorized or licensed the use of Plaintiff's Federally Registered Trademarks to Defendants.

72. Defendants' unauthorized use of Plaintiff's Federally Registered Trademarks in their marketing, offering, and distribution of counterfeit services are diluting the distinctive quality of Plaintiff's Federally Registered Trademarks and the goodwill associated therewith in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).

73. Such conduct has injured Plaintiff and that injury will continue unless the Court enjoins Defendants from committing further wrongful acts.

74. Upon information and belief, Defendants intentionally and willfully utilized Plaintiff's Federally Registered Trademarks and traded on Plaintiff's reputation and goodwill.

75. Plaintiff has no adequate remedy at law.

76. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using Plaintiff's Federally Registered Trademarks or any marks confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action and treble damages pursuant to 15 U.S.C. § 1117(a).

## FOURTH CAUSE OF ACTION

**FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING**
**15 U.S.C. § 1125(a)**

77. Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

78. Defendants have used in commerce, and continue to use in commerce, Plaintiff's Federally Registered Trademarks in connection with their services.

79. Defendants have used in connection with their services false designations of origin and false and misleading descriptions and representations, including Plaintiff's Federally

Registered Trademarks, which tend falsely to describe the origin, sponsorship, association or approval by Plaintiff of the services offered by Defendants.

80. Defendants have used Plaintiff's Federally Registered Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiff.

81. Defendants' use of Plaintiff's Federally Registered Trademarks in connection with the counterfeit services constitutes false descriptions and representations tending to falsely describe or represent Defendants and their services as being authorized, sponsored, affiliated or associated with Plaintiff.

82. Defendants have used Plaintiff's Federally Registered Trademarks in connection with counterfeit services with the express intent to cause confusion and mistake, to deceive and mislead the consuming public, to trade upon the high-quality reputation of Plaintiff's services and to improperly appropriate for themselves the valuable trademark rights of Plaintiff.

83. Defendants' aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendants' products as those of Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84. Defendants' wrongful acts will continue unless enjoined by this Court.

85. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using Plaintiff's Federally Registered Trademarks or any marks confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains,

profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action and treble damages pursuant to 15 U.S.C. § 1117(a).

## FIFTH CAUSE OF ACTION

### INJURY TO BUSINESS REPUTATION
### NY GBL § 360-L

86. Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

87. Due to Plaintiff's extensive revenues and significant marketing and promotional activities, Plaintiff's Federally Registered Trademarks have achieved widespread acceptance and recognition among the consuming public throughout the United States.

88. Plaintiff's Federally Registered Trademarks are arbitrary and distinctive and identify Plaintiff as the source and origin of the services with which Plaintiff's Federally Registered Trademarks appear.

89. Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, in violation of New York General Business Law § 360-l.

90. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using Plaintiff's Federally Registered Trademarks, and to recover all damages, including attorneys' fees, which Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, as well as the costs of this action.

## SIXTH CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT

91. Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

92. Plaintiff owns all right, title, and interest in and to Plaintiff's Federally Registered Trademarks, including all common law rights in those marks.

93. Defendants, without Plaintiff's authorization, have used and are continuing to use spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to Plaintiff's Federally Registered Trademarks.

94. Defendants' foregoing acts are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the news publications trade and industry as to whether Defendants' services originate from, are affiliated with, sponsored by, or endorsed by Plaintiff.

95. Defendants' acts constitute trademark infringement in violation of the common law of the State of New York.

96. Plaintiff has been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' unlawful acts unless they are permanently enjoined from their unlawful conduct.

97. Plaintiff has no adequate remedy at law.

98. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using Plaintiff's Federally Registered Trademarks, and to recover all damages, including attorneys' fees, which Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, as well as the costs of this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment against Defendants as follows:

A.  Granting temporary, preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

(1)  Using Plaintiff's Federally Registered Trademarks or any marks confusingly similar thereto, in connection with the distribution, advertising, and/or offering of services;

(2)  Committing any other act which falsely represents or which has the effect of falsely representing that the services of Defendants are licensed by, authorized by, offered by, created by, sponsored by, or in any other way associated with, Plaintiff;

(3)  Otherwise infringing upon Plaintiff's Federally Registered Trademarks;

(4)  Otherwise diluting Plaintiff's Federally Registered Trademarks;

(5)  Unfairly competing with Plaintiff; and

B.  Awarding actual damages suffered by Plaintiff as a result of Defendants' acts;

C.  Awarding Plaintiff all of Defendants' profits and all damages sustained by Plaintiff as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.  Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

E.  Ordering Defendants to disgorge their profits;

F.  Ordering Defendants to transfer ownership of the CheatSheet.com domain to Plaintiff;

G. Awarding treble damages in the amount of Defendants' profits or Plaintiff's damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

H. Awarding Plaintiff statutory damages pursuant to 15 U.S.C. §1117(c);

I. Awarding Plaintiff punitive damages in connection with their claims under New York law;

J. Awarding applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117(b); and

K. That the Court award Plaintiff such other and further relief as it deems proper.

Dated: February 28, 2019
       New York, New York

**BAKER & HOSTETLER LLP**

By: _____
Gerald J. Ferguson (GF 0370)
Kevin M. Wallace (KW 1284)
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Counsel for Plaintiff*
*The Daily Beast Company LLC*